# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSHUA S. MILLER,** | : | |
| **Plaintiff** | : | |
| | : | CIVIL ACTION NO. 3:18-CV-0858 |
| v. | : | |
| | : | (Judge Caputo) |
| **LUZERNE COUNTY DEPT. of CORRECTIONS,** *et al.,* | : | |
| | : | |
| **Defendants** | : | |

# M E M O R A N D U M

## I. Introduction

Joshua S. Miller, an inmate formerly incarcerated at the Luzerne County Department of Corrections (LCDC) in Wilkes-Barre, Pennsylvania commenced this action on April 10, 2018.[1] (ECF Nos. 1 and 4.) Plaintiff appears *pro se* and seeks to proceed *in forma pauperis*. (ECF No. 2.) Named as defendants are the following LCDC employees: Warden John Doe; Deputy Warden James Larsen; Capt. Orkwis; Lt. Domagauer; Sgt. Mike Rostkowski; Corporal Renfer; CO McCafferty; CO Flynn, CO Pokninchack and Ms. Kate, the LCDC's PREA Coordinator.[2] Trooper Jennifer

---

[1] Mr. Miller is presently confined at the Mahanoy State Correctional Institution in Frackville, Pennsylvania. The Court is uncertain whether Mr. Miller is Plaintiff's true name or an alias because the envelope containing his Complaint was mailed under the name Tyler Groner. Plaintiff is reminded of his ongoing obligation to notify the Court of his correct name and place of incarceration throughout this litigation. Should Plaintiff be transferred to a different facility or commence serving a new sentence (under a different name or inmate number), he must promptly advise the Court. His failure to do so may result in the dismissal of his action due to the Court's inability to communicate with him.

[2] Although Mr. Miller does not define PREA, the Court believes he is referring to the Prison Rape Elimination Act of 2003, 34 U.S.C. § 30301 – 30309 (2012), a federal law dealing with the sexual assault of prisoners.

Kosakevitch of the Pennsylvania State Police (PSP) and the PSP's PREA Administration are also named as defendants. The last two defendants are the following entities: the LCDC and the Luzerne County District Attorney's Office. (ECF No. 1.)

The Court proceeds to review and screen the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). For the reasons set forth below, Mr. Miller's motion for leave to proceed *in forma pauperis* will be granted. However, for the reasons set forth below, the Complaint will be dismissed with respect to CO Flynn, the LCDC, the Luzerne County District Attorney's Office, the PSP's PREA Administration and Trooper Kosakevitch. Mr. Miller will be granted leave to file a curative amended complaint.

**II.    Standard of Review for Screening *Pro Se In Forma Pauperis* Complaints**

When a litigant seeks to proceed *in forma pauperis*, without payment of fees, 28 U.S.C. § 1915 requires the court to screen the complaint. *See* 28 U.S.C. § 1915(e)(2)(B). Likewise, when a prisoner seeks redress from a government defendant in a civil action, whether proceeding *in forma pauperis* or not, the court must screen the complaint. *See* 28 U.S.C. § 1915A(a). Both 28 U.S.C. § 1915(e)(2)(B) and § 1915(A) give the court the authority to dismiss a complaint if it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i) - (iii); 28 U.S.C. § 1915A(b)(1) - (2); *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013).

A complaint is frivolous if it lacks an arguable basis either in law or fact. *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (citing *Neitzke v. Williams*, 490 U.S. 319, 327-28, 109 S.Ct. 1827, 1832 - 33, 104 L.Ed.2d 338 (1989)). In deciding whether

the complaint fails to state a claim on which relief may be granted, the court employs the standard used to analyze motions to dismiss under Fed. R. Civ. P. 12(b)(6). *See Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000). Under Rule 12(b)(6), the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 - 11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 1949 - 50, 173 L.Ed.2d 868 (2009)). The court may also rely on exhibits attached to the complaint and matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a)(2). A complaint is required to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)).

To test the sufficiency of the complaint, the court "must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, a court must "take note of the elements a plaintiff must plead to state a claim." *Id.* (internal quotations and brackets omitted). Second, the court must identify allegations that are merely legal conclusions "because they . . . are not entitled to the assumption of truth." *Id.* While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964). Third, a court should assume the veracity of all well-pleaded factual allegations and "then determine whether they plausibly give rise to an entitlement to relief." *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1949).

A complaint filed by a *pro se* plaintiff must be liberally construed and "held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 - 21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972)); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). Yet, even a *pro se* plaintiff "must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir.2013) (citation omitted). *Pro se* litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 861 (3d Cir. 2014).

### III. Allegations of the Complaint

On April 19, 2016, Deputy Warden Larsen, serving as the Acting Director of the prison, advised CO McCafferty, Capt. Orkwis, Lt. Domagauer and Cpl. Renfer that contraband was entering the facility through the visiting room via a small hole in booth 6. (ECF No. 4.) Visitors were suspected of passing contraband filled straws through the hole to inmates. (*Id.*) Four inmates, including Mr. Miller, who used visiting booth 6 that day were found in possession of contraband following their visit. (*Id.*) Mr. Miller, and at least one other inmate, was found in possession of "one white straw with a red and yellow stripe containing an unknown substance." (*Id.* at p. 5.) The said contraband was found "in the groin area of Inmate Miller's pants." (*Id.*) Another inmate was found in possession of an unknown type pill and a contraband straw that was concealed in the inmate's buttock area. (*Id.* at p. 7.)

Mr. Miller claims he "was sexually, physically, emotionally & mentally abused and violated" during his post-visit strip search conducted by CO Pokninchak, Warden Larsen, Lt. Domagauer, CO McCafferty, Cpl. Renfer and others. (ECF No. 1.) The strip search was conducted in the Warden's conference room which is connected by a door to an office area occupied by male and female workers. (*Id.*) Cpl. Renfer allegedly slammed Mr. Miller into a wall and threatened him with bodily harm if he moved. (*Id.*) Mr. Miller's handcuffs and shackles were removed so he could disrobe. He removed his own shirt, shoes, pants, socks, and undergarments. During the search, Cpl. Renfer made derogatory remarks about the size of Plaintiff's penis. (*Id.*) Mr. Miller was commanded to bend forward, cough, and run his own fingers through his anal area. Cpl. Renfer then directed that he run his fingers through his mouth. No contraband was discovered during this initial search. (*Id.*)

Cpl. Renfer then directed Mr. Miller, still nude, to get on his hands and knees "and put his ass in the air". (*Id.*) Plaintiff began to cry out in fear and embarrassment. Lt. Domagauer threatened him with pepper spray if he uttered another word. (*Id.*) Cpl. Renfer then ordered CO McCafferty "to examine [Plaintiff's] anal are[a] with a flashlight". (*Id.*, at p. 4.) Mr. Miller than "felt a very cold touch on [his] anal area attempting to see in the rectum hole." (*Id.*) At that point Mr. Miller "felt violated, began to cry and yell out, [he] fell from [his] knees and layed (sic) on his stomach." (*Id.*, at p. 4.) During the search Mr. Miller noted that the office door continued to open and close. (*Id.*)

Learning that another inmate was coming out of the visiting area to be searched, staff pulled Mr. Miller to his feet and placed in a space between the Lieutenant's office and the Warden's conference room. Plaintiff was nude, handcuffed and shackled in this area where he was visible to male and female office workers whenever staff opened

doors to that area.  (*Id.*)  After several minutes Mr. Miller was given a red jump suit and taken to the Restricted Housing Unit (RHU).  (*Id.*)

Mr. Miller was placed in pre-hearing confinement within the RHU for three days in a single cell with no water or plumbing.  (*Id.*)  He immediately sought medical and psychiatric treatment.  Although denied all writing materials and phone access, he "managed to write" to Ms. Kate, LCDC's PREA coordinator.  (*Id.* at p. 6.)  Plaintiff was given an interview with Ms. Kate and Cpl. Wilk in the Warden's conference room.  (*Id.*)  Plaintiff recounted the events of April 19, 2016, and asked for help obtaining medical and psychiatric treatment because all of his requests "are not being answered".  (*Id.* at p. 6.)  Mr. Miller did not receive responses to the grievances he sent to the Major's office.  (*Id.*)  Likewise, he never received any medical or mental health treatment.

At some point Ms. Kate wrote Mr. Miller advising that she had copies of several of his requests and grievances and would keep them on record "while she forwards the case to the Luzerne County District Attorneys Office, and that [he] will be contacted by the D.A.'s office."  (*Id.*)  Mr. Miller never heard from the D.A.'s office concerning his PREA complaint.

Eventually Mr. Miller was placed in an isolation cell on the 5th floor of the prison which is also a "lockdown unit".  (*Id.*)  Mr. Miller "had no idea" why he was placed in the lockdown unit.  He later learned "it was to increase punishment for filing request and grievances".  (*Id.*)

In July 2016, Mr. Miller was released from lockdown and placed in population on the 3rd floor of the prison.  (*Id.*)  Cpl. Renfer dictates policy for that floor and told other inmates that Plaintiff was a "snitch" and had filed a PREA claim against him.  When Mr. Miller requested his TV and other personal property from the property room, Cpl. Renfer

initially replied that Plaintiff never purchased a TV. After showing Cpl. Renfer his receipt for the TV, Cpl. Renfer told Plaintiff that it was confiscated as contraband. (*Id.*) Plaintiff states he then received a series of false misconduct reports from officers involved in the April 2016 strip search which resulted in his temporary placement in the RHU until he was found "not guilty" at related misconduct hearings. (*Id.*) Mr. Miller also claims "Sgt. Mike Rost" would come to his cell, place him in handcuffs and escort him to "lockup" without reason. Sgt. Mike would also place him in the Dayroom Unit and withhold his personal and legal property without reason. (*Id.*) At some point, Cpl. Renfer falsely charged Plaintiff with entering the cell of another inmate and assaulting him. Mr. Miller spent the next 65 days in the RHU. (*Id.*)

At some point Mr. Miller learned that Sam Hyder was appointed as the new Warden and requested a meeting with him. (*Id.*) After relating to Warden Hyder the events of the April strip search, the ensuing false and retaliatory misconducts, and the "ongoing feud" between him and Cpl. Renfer, Warden Hyder released him from the RHU and said he would stop the "ongoing behaviors". (*Id.*) The feud between Mr. Miller and Cpl. Renfer ended after Plaintiff was assaulted by two inmates. Plaintiff claims Cpl. Renfer told the entire unit that "if they fuck [Plaintiff] up" they will not get into trouble. (*Id.*) Following the attack, only Mr. Miller, and not his attackers, were placed in the RHU. (*Id.*)

In early June 2017, after Mr. Miller requested Warden Hyder separate him from Cpl. Renfer and "Sgt. Mike," he was transferred to the 5th floor housing unit where he resided until his transfer on November 27, 2017. (*Id.*, at p. 7.) During that time, he did not incur any misconduct or have any problems. (*Id.*)

Prior to leaving the prison, Plaintiff contacted Ms. Kate "concerning the April 19, 2016 Sexual Abuse" and related staff misconduct. (*Id.*) He informed her of his need of all documents related to his PREA complaint. Ms. Kate failed to act or help Plaintiff in any manner, violating "set standards, policy and procedures" of the PREA Administration. (*Id.*)

Mr. Miller states that the PSP "were at the prison on April 19, 2016" and are "[f]ully responsible for the acts that have taken place on and after the visitation." (*Id.*)

Mr. Miller seeks monetary damages against the defendants.

IV. **Discussion**

    A. **Claims against the Luzerne County Dept. of Corrections, the Luzerne County District Attorney's Office and the PREA Administration are subject to Dismissal.**

A plaintiff, in order to state a viable § 1983 claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Rehberg v. Paulk*, 566 U.S. 356, 361, 132 S.Ct. 1497, 1501, 182 L.Ed.2d 593 (2012); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 302 (3d Cir. 2016). Only "persons" are subject to suit under § 1983, and entities such as the Luzerne County Department of Correction, the Luzerne County District Attorney's Office, and the PREA Administration do not qualify as "persons". *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989); *Edwards v. Northampton Cty.*, 663 F. App'x 132, 136 (3d Cir. 2016) (prison not a "person" subject to suit under §

1983); *Mikhaeil v. Santos*, 646 F. App'x 158, 161 (3d Cir. 2016) (per curiam) (a county prosecutor's office is a state agency, and not a person amenable to suit under §1983).

Because these entities are not "persons" subject to suit under § 1983, they will be dismissed from this action with prejudice.

### B. Plaintiff fails to allege the personal involvement of CO Flynn and Tpr. Kosakevitch.

Individual liability can be imposed under 42 U.S.C. § 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)); *Sutton v. Rasheed*, 323 F.3d 236, 249 – 50 (3d Cir. 2003). The personal involvement of a defendant in a § 1983 action may be shown "through allegations of personal direction or of actual knowledge and acquiescence." *Argueta v. U.S. Immigration & Customs Enf't*, 643 F.3d 60, 71 (3d Cir. 2011) (quoting *Rode*, 845 F.2d at 1207). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of "conduct, time, place, and persons responsible." *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207 – 08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208. Moreover, a defendant "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *C.H. ex rel. Z.H. v. Olivia*, 226 F.3d 198, 201 – 02 (3d Cir. 2000). Allegations that a supervisor "had constructive knowledge of a subordinate's unconstitutional conduct simply because of his role as a supervisor" do

not suffice. *Broadwater v. Fow*, 945 F.Supp.2d 574, 588 (M.D. Pa. 2013) (citing *C.H. ex rel. Z.H.*, 226 F.3d at 202).

Here, Mr. Miller fails to make any specific averments with respect to CO Flynn or Tpr. Kosakevitch's involvement in the various events which allegedly led to the violation of his constitutional rights. Neither defendant is alleged to have known of or participated in the April 2016 strip search or Plaintiff's receipt of retaliatory misconducts. Accordingly, the Court will dismiss all claims against CO Flynn and Tpr. Kosakevitch without prejudice and allow Mr. Miller to file an amended complaint alleging facts of their personal involvement, if possible, sufficient to state a claim of individual liability against them under § 1983.

### C. Mr. Miller's PREA Claim

To the extent Mr. Miller attempts to bring a claim under PREA, it is subject to dismissal, as PREA does not provide a private right of action. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 – 85, 122 S.Ct. 2268, 2275 - 2277 (2002); *Bower v. Price*, No. 1:17-CV-01473, 2018 WL 1334985, at * 3 (M.D. Pa. Mar. 15, 2018); *Bey v. New Jersey Dep't of Corr.*, Civ. Action No. 18-3693, 2018 WL 5784999, at * 3 (D. N.J. Nov. 5, 2018). Accordingly, Plaintiff's PREA claim against defendants fails as a matter of law and will be dismissed with prejudice.

### D. Leave to Amend

Mr. Miller will be granted twenty-one days to file an amended complaint alleging the personal involvement of CO Flynn and Tpr. Kosakevitch and any others he claims were involved in the April 19, 2016-strip search and those who issued him false

misconducts in retaliation for his filing of a PREA claim. If Mr. Miller decides to file an amended complaint, he is advised he must clearly designate on the face of the document that it is the "Amended Complaint," it must bear the docket number assigned to this case, and it must be retyped (double spaced) or legibly rewritten in its entirety, preferably on the court-approved form. In addition, the "amended complaint must be complete in all respects. It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). Mr. Miller is advised that any amended complaint he may file supersedes (replaces) the original complaint. In addition, it must be "retyped or reprinted so that it will be complete in itself including exhibits." M.D. Pa. LR 15.1; *see also W. Run Student Hous. Assocs. V. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013). Consequently, all causes of action alleged in the original complaint which were not dismissed with prejudice and are not replead in the amended complaint are waived.

Mr. Miller is also advised that his amended complaint must be concise and direct. *See* Fed. R. Civ. P. 8(d). Each allegation must be set forth in individually numbered paragraphs in short, concise and simple statements. *Id.* The allegations should be specific enough as to time and place and should identify the specific person or persons responsible for the deprivation of his constitutional rights and what each individual defendant did that led to deprivation of his rights. *Iqbal*, 556 U.S. at 676, 129 S.Ct. at 1948. Plaintiff must also specify the relief he seeks. Mr. Miller's failure to file an appropriate amended complaint within the required time will result in the Court directing service of his strip search and retaliation claims against the remaining defendants: Larsen, Orkwis, Damagauer, Rostkowski, Renfer, McCafferty, Ms. Kate and CO

Pokninchack.  Finally, Plaintiff is reminded of his obligation to advise the Court of any change of address.  See M.D. Pa. LR 83.18.  His failure to do so will be deemed as his abandonment of the lawsuit resulting in the dismissal of the action.

     An appropriate order follows.

**Date:  March 5, 2019**        /s/ A. Richard Caputo
                                                 **A. RICHARD CAPUTO**
                                                 **United States District Judge**