IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA S. MILLER | : | |
| | : CIVIL NO.  3: 18-CV-0858 | |
| Plaintiff, | : | |
| | : | |
| vs. | : (JUDGE WILSON) | |
| | : | |
| LUZERNE COUNTY DEPT. OF | : | |
| CORRECTIONS, et al. | : | |
| | : | |
| Defendants: | : (ELECTRONICALLY FILED) | |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................. i-ii

TABLE OF CITATIONS ........................................................... iii-vi

I.     PROCEDURAL HISTORY ............................................... 1

II.    STATEMENT OF FACTS ................................................ 2

    A.    Allegations of the Complaint ................................... 2

    B.    Facts of Record ........................................................ 3

III.   STATEMENT OF THE QUESTIONS PRESENTED ..................... 3

    A.    WHETHER MILLER HAS FAILED TO CREATE
        A GENUINE ISSUE OF MATERIAL FACT THAT
        ANY OF HIS CONSTITUTIONAL RIGHTS WERE
        VIOLATED INCIDENT TO THE SEARCH OF HIS
        PERSON? .................................................................... 3

    B.    WHETHER MILLER HAS FAILED TO CREATE A
        GENUINE ISSUE OF MATERIAL FACT THAT HIS
        CLAIMS OF RETALIATION FAIL AS A MATTER
        OF LAW? .................................................................... 3

    C.    WHETHER THE DEFENDANTS ARE ENTITLED
        TO QUALIFIED IMMUNITY? ................................. 3

IV.   LAW AND ARGUMENT ................................................ 4

    A.    THE LEGAL STANDARD ....................................... 4

B.   THE INDIVIDUAL DEFENDANTS ARE ENTITLED
     TO SUMMARY JUDGMENT ON MILLER'S CLAIM
     THAT THE SEARCH OF HIS PERSON ON APRIL 19,
     2016 VIOLATED HIS CONSTITUTIONAL RIGHTS....... 5

C.   MILLER'S CLAIMS OF RETALIATION FAIL AS A
     MATTER OF LAW.............................................................. 16

D.   DEFENDANTS ARE ENTITLED TO QUALIFIED
     IMMUNITY ON BOTH THE SEARCH AND
     RETALIATION CLAIMS.................................................... 21

IV.  CONCLUSION ............................................................. 23

# TABLE OF CITATIONS

**CASES**

<u>Allah v. Seiverling</u>, 229 F.3d 220, 225 (3d Cir. 2000) ...................... 17

<u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)............................. 21

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)............... 4

<u>Armstrong</u>, 2018 WL 6788524, at *1.................................................. 15

<u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 741 (2011) ................................... 21

<u>Bell v. Wolfish</u>, 441 U.S. 520, 558 (1979) .......................................... 6, 7

<u>Boddie v. Schnieder</u>, 105 F.3d 857 (2d Cir. 1997) ............................ 10, 15

<u>Booze v. Wetzel</u>, 2015 WL 5173937 at *13-16 (M.D. Pa. 2015) ...... 20

<u>Celotex Corp. V. Catrett</u>, 477 U.S., 324 (1986) ................................ 4, 5, 6

<u>Crawford v. Cuomo</u>, 796 F.3d 252, 258 (3d Cir. 2015) .................... 10, 11

<u>Florence v. Bd. of Chosen Freeholders of County of Burlington</u>,
566 U.S. 318, 328 (2012) ...................................................................... 7, 8, 9

<u>Freitas v. Ault</u>, 109 F.3d 1335, 1338-39 (8th Cir. 1997) ...................... 10

<u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).................................. 21

<u>Harris v. Zappan</u>, No. CIV A 97-4957, 1999 WL 360203, at *4-*5
(E.D. Pa. May 28, 1999) ........................................................................ 16

<u>Howell v. Cataldi</u>, 464 F.2d 272, 283 (3dCir. 1872) .......................... 13

Hudson v. McMillan, 503 U.S. 1, 8, 112 S.Ct. 995 (1992) ................  10, 13

Hudson v. Palmer, 468 U.S. 517, 528 (1984) ......................................  8

Jordan v. Cicchi, 428 F.App'x 195, 199-200 (3d Cir. 2011)...............  6, 8

Jutrowski v. Twp. of Riverdale, 2017 WL 1395484, at *4
(D.N.J. Apr. 17, 2017;  904 F.3d 280, 285 (3d Cir. 2018)...................  12, 13

Lauren W. *ex rel*. Jean W. V. DeFlaminis, 480 F.3d 259, 267
(3d Cir. 2007) ......................................................................................  17, 20

L.R. v. Sch. Dist. Of Phila., 836 F.3d 235, 241 (3d Cir. 2016) ...........  21

Malley v. Briggs, 475 U.S. 335, 341 (1986) .......................................  22

Mathie v. Fries, 121 F.3d 808 (2d Cir. 1997) .....................................  10

McIntyre v. Kellinger, 741 F. App'x 891, 892-93 (3d Cir. 2018) .......  14

Mearin v. Greene, 555 Fed. Appx. 156, 158-59 (3d Cir. 2014) ..........  20

Moss v. Pennsylvania, __ Fed. Appx. __, 2020 WL 7240185 .............  8

Mullenix v. Luna, 136 S.Ct. 305, 308 (2015) ......................................  22

Pastore v. Bell Tel. Co. Of Pa., 24 F.3d 508, 512 (3d Cir. 1994).........  4

Payton v. Vaughn, 798 F.Supp. 258, 261-62 (E.D. Pa. 1992) ............  7

Pearson v. Callahan, 555 U.S. 223, 236 (2009)...................................  21

Randall v. Cty. of Berks, Pennsylvania, 2015 WL 5027542,
at *17 (E.D. Pa. Aug. 24, 2015) ...................................................................  7

iv

Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001) ............................ 16

Ricks v. Shover, 891 F.3d 468 (3d Cir. 2018) ...................................... 10,11,12,15

Robinson v. Danberg, 729 F. Supp. 2d 666, 686 (D. Del. 2010) ........ 10

Robinson v. Ricci, No. 08-2023, 2012 WL 1067909, *16-17
(D.N.J. Mar. 29, 2012)............................................................................. 7, 8

Russell v. City of Phila., 428 F. App'x 174, 177 (3d Cir. 2011) ......... 6

Santini v. Fuentes, 795 F.3d 410, 418 (3d Cir. 2015) ............................ 21

Saucier v. Katz, 533 U.S. 194, 201 (2001) ........................................... 22

Solan v. Ranck, 2007 WL 4111424, at *7-8 (M.D. Pa. Nov. 16,
2007), aff'd, 326 F. App'x 97 (3d Cir. 2009) ...................................... 9

Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000) ........................ 17

Walker v. Taylorville Corr. Ctr., 129 F.3d 410, 414 (7th Cir. 1997) .... 10

Washington v. Harris, 186 F. App'x 865, 866 (11th Cir. 2006) ............ 15

Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016) .......................... 16

Watson v. Wingard, No. 3:16-cv-00055, 2018 WL 2108316, at *1
(W.D. Pa. Jan. 31, 2018) ...................................................................... 15

Whitley v. Albers, 475 U.S. 312, 319-20, 106 S.Ct. 1078 (1986) ...... 11

Youngberg v. Romeo, 457 U.S. 307, 321-22, (1982) ........................... 7

**STATUTES, RULES, REGULATIONS, Etc.**

U.S. Cons. amend. IV. .............................................................. 6

Fed.R.Civ.P. 56(a) .................................................................. 4, 5

## I.   PROCEDURAL HISTORY

On or about April 20, 2018 Plaintiff filed a pro se civil rights complaint (Doc. 1) against various defendants in this matter. On March 5, 2019, the Court issued a Memorandum and Order (Doc. 14) granting plaintiff's motion to proceed *in forma pauperis,* dismissing the claims against various defendants and giving Plaintiff 21 days to file an amended complaint setting forth claims against Defendants Flynn, Kosakevitch and others involved in the April 2016 strip search and issuance of retaliatory false misconducts against him.

On April 4, 2019, Plaintiff made a request for additional time to file his amended complaint which was granted by the Court on April 10, 2019.  Plaintiff did not file an amended complaint.  On July 31, 2019, the Clerk issued Waivers of Service to the Defendants which were returned thereby making Defendants responsive pleading due on or before September 30, 2019.

On September 30, 2019, undersigned counsel entered his appearance for Moving Defendants and filed a Motion for Enlargement of Time to Respond to Plaintiff's Complaint.  On November 22, 2019, Defendants filed an Answer and Affirmative Defenses (Doc. 32) to Plaintiff's Complaint.

On December 9, 2019, the Court issued an Order establishing deadlines in this case.  This order has subsequently been amended on three occasions, the most

1

recent of which was on February 19, 2021, at which time the dispositive motion deadline was enlarged to March 12, 2021.  Defendants have filed a motion for summary judgment and statement of undisputed material facts on March 12, 2021. This brief is filed in support thereof.

## II.    STATEMENT OF FACTS

### A.    Allegations of the Complaint[1]

On March 5, 2019, the late Judge Caputo issued an Order (Doc. 14) giving the Plaintiff 21 days to file an amended complaint setting forth claims against CO Flynn, Trooper Kosakevitch and others involved in the April 2016 strip search and the issuance of retaliatory false misconducts against him.  In this Order, the Court indicated that should plaintiff fail to timely file an amended complaint, the action shall proceed exclusively on his strip search and retaliation claims against Defendants Larsen, Orkwis, Damagauer, Rostkowski, Renfer, McCafferty, Ms. Kate and CO Pokninchack. A review of the docket will show that while Plaintiff requested additional time on two separate occasions (Doc. 16) and (Doc. 19) both of which were granted (Docs. 17 and 20) Plaintiff had until July 19, 2019 to file an amended complaint but failed to do so.   As such, the only claims that are moving

---

[1]  Based on the Court's March 5, 2019 Order (Doc. 14), the remaining allegations on which the Plaintiff can proceed are set forth in this subsection.

2

forward are Plaintiff's claims against Moving Defendants are on the alleged use of excessive force during the strip search and the alleged retaliation claims.

**B.     Facts of Record**

The Moving Defendant respectfully incorporate their Statement of Undisputed Material Facts (SUMF) which are being submitted together with this brief.

**III.   STATEMENT OF THE QUESTIONS PRESENTED**

**A.     WHETHER MILLER HAS FAILED TO CREATE A GENUINE ISSUE OF MATERIAL FACT THAT ANY OF HIS CONSTITUTIONAL RIGHTS WERE VIOLATED INCIDENT TO THE SEARCH OF HIS PERSON?**

(Suggested Answer: In the Affirmative)

**B.     WHETHER MILLER HAS FAILED TO CREATE A GENUINE ISSUE OF MATERIAL FACT THAT HIS CLAIMS OF RETALIATION FAIL AS A MATTER OF LAW?**

(Suggested Answer: In the Affirmative)

**C.     WHETHER THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY?**

(Suggested Answer: In the Affirmative)

## IV.   LAW AND ARGUMENT

### A.   THE LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  A fact is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party."  Anderson, 477 U.S. at 248.  In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."  Pastore v. Bell Tel. Co. Of Pa., 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury."  Anderson,

4

477 U.S. at 251-52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a *prima facie* showing that it is entitled to summary judgment.  *See* Fed.R.Civ.P. 56(a); Celotex, 477 U.S. at 331.  Only once that *prima facie* showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact.  *See* Fed.R.Civ.P. 56(a); Celotex, 477 U.S. at 331.

### B.   THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON MILLER'S CLAIM THAT THE SEARCH OF HIS PERSON ON APRIL 19, 2016 VIOLATED HIS CONSTITUTIONAL RIGHTS.

In his Complaint, Miller proceeding *pro se*, understandably does not identify the particular constitutional amendment which he believes affords him relief.  The facts as alleged relating to the search potentially implicate a violation of the Fourth and Eighth Amendments.  Scrutiny of the instant record establishes that under either Fourth or Eighth Amendment jurisprudence, Miller's claim fails.

The Defendants readily concede that their sworn affidavits conflict with the allegations of Miller's Complaint as well as his version of events as related in his deposition testimony.  Miller maintains he was verbally accosted and subjected to humiliating treatment incident to the search (*See, generally* Doc. 1; Exhibit "A").

5

The Defendants maintain he registered no complaints during the search and it was carried out uneventfully (SUMF at ¶s 25 (1-7); 26 (1-3); 27 (1-5); 28 (1-3); 29 (1-9); 30 (1-3); 31 (1-2).[2]

The most notable allegation in Miller's Complaint as it relates to any physical touching of intimate areas of his body is the contention that, "I felt a very cold touch on my anal area ...." (Doc. 1 at p. 4; Exhibit "A").  While this Court is certainly not required to give credence to unsubstantiated allegations as a basis for denying a summary judgment motion, *see*, Celotex Corp. V. Catrett, 477 U.S., 324 (1986), this contention, standing alone, would not provide a basis for relief under either the Fourth or the Eighth Amendment.

As indicated above, Miller's challenge to a strip search may be cognizable under 42 U.S.C. §1983 through the Fourth or Eighth Amendments.  *See* Jordan v. Cicchi, 428 F.App'x 195, 199-200 (3d Cir. 2011).  The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Cons. amend. IV.  Pretrial detainees and convicted prisoners, however, only have limited rights under the Fourth Amendment.  *See* Bell v. Wolfish, 441 U.S. 520, 558 (1979) (inmates "retain some Fourth Amendment rights upon commitment to a corrections facility ....."); Russell

---

[2] Exhibits "C"-"I".

6

v. City of Phila., 428 F. App'x 174, 177 (3d Cir. 2011) (prisoner could state a

Fourth Amendment claim based on a strip and cavity search).  To raise a Fourth

Amendment claim, the prisoner must allege that the strip search was unreasonable.

See Payton v. Vaughn, 798 F.Supp. 258, 261-62 (E.D. Pa. 1992); see also

Robinson v. Ricci, No. 08-2023, 2012 WL 1067909, *16-17 (D.N.J. Mar. 29,

2012).  To determine whether a search was "reasonable" within the meaning of the

Fourth Amendment requires "balancing the significant and legitimate security

interests of the institution against the privacy interests of the inmates."  Bell v.

Wolfish, 441 U.S. 520, 560 (1995); Youngberg v. Romeo, 457 U.S. 307, 321-22,

(1982) (applying the balancing test from Bell v. Wolfish to involuntary civilly

committed defendant).  The strip search in Bell occurred when the detainee

returned from a contact visit with someone outside the institution, a scenario

which presented an opportunity for smuggling contraband into the facility. Bell,

441 U.S. at 560.  This threat conferred a "strong governmental justification" for

invading the detainees' privacy.  See Randall v. Cty. of Berks, Pennsylvania, 2015

WL 5027542, at *17 (E.D. Pa. Aug. 24, 2015) (citing Bell, 441 U.S. at 559).  The

Supreme Court re-emphasized that "correctional officers must be permitted to

devise reasonable search policies to detect and deter the possession of contraband

in their facilities."  Florence v. Bd. of Chosen Freeholders of County of

7

Burlington, 566 U.S. 318, 328 (2012).  Where security is involved, "deference must be given to the officials in charge of the jail unless there is substantial evidence demonstrating their response to the situation is exaggerated."  Id. at 330 (citation and internal quotation marks omitted).  Thus, in *Florence*, the Supreme Court held that a jail policy of requiring that persons admitted to a jail remove their clothing and expose their genital areas for visual inspection as a routine part of the intake process does not violate the Fourth Amendment.  *See* Florence, 566 U.S. 318.

Where a prisoner alleges that the strip search was conducted in a physically abusive manner, the Eighth Amendment applies.  *See* Jordan, 428 F. App'x at 199-200 (explaining that excessive force claim arising from strip search may proceed under either Fourth or Eighth Amendments, but latter is "the primary source of protection after an individual's conviction")[3]; *see also* Florence, 566 U.S. at 339 (Eighth Amendment may be implicated where a strip search is carried out in such a way as to intentionally humiliate or abuse a prisoner, citing Hudson v. Palmer, 468 U.S. 517, 528 (1984); Robinson, 2012 WL 1067909, at *16-17 (in addition to

---

[3]  Because Miller was being held at the direction of the Commonwealth on a parole violation at the time of the search on April 19, 2016, Defendants maintain that Miller's claims related to the search as a convicted individual are most properly judged under the Eighth Amendment.  *See, e.g.*, Moss v. Pennsylvania, __ Fed. Appx. __, 2020 WL 7240185 (parole violator's claims analyzed under the cruel and unusual punishment standard of the Eighth Amendment.

possible Fourth Amendment violation, "Eighth Amendment may be implicated where the strip search or visual body cavity search was conducted in a brutish and unreasonable manner). Courts have found that, in certain circumstances, prisoner nudity can constitute cruel and unusual punishment under the Eighth Amendment. *See* <u>Solan v. Ranck</u>, 2007 WL 4111424, at *7-8 (M.D. Pa. Nov. 16, 2007), *aff'd*, 326 F. App'x 97 (3d Cir. 2009). The "basic right of privacy" is implicated when a prisoner is forced to be unclothed and, when done to humiliate the prisoner can violate the Eighth amendment. *Id*. at *9.

Miller's claims that the search, even as he describes it, violates the Fourth Amendment fails as a matter of law. Here, Miller readily admits he participated in a scheme to smuggle contraband (drugs in pill form) into the facility, a criminal offense to which he subsequently pled guilty (SUMF at ¶15; ¶32; Exhibit "J" at p. 7). In determining whether a particular strip search policy or action is reasonable, courts must balance an inmate's constitutional right to privacy and the needs of the institution to maintain safety and security. *See* <u>Florence</u>, 566 U.S. at 326-27. Specifically, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." <u>Bell</u>, 441 U.S. at 559. The search itself and the manner in which it was conducted clearly does not constitute a Fourth Amendment violation

9

on this record.

To the extent Miller claims he was sexually harassed in violation of the Eighth Amendment because he was told to strip naked, a contention disputed by the Defendants, this claim fails as well.

Allegations of sexual harassment of a prisoner by a corrections officer may state an Eighth Amendment claim under §1983 so long as two elements are met. *See* Walker v. Taylorville Corr. Ctr., 129 F.3d 410, 414 (7th Cir. 1997); Mathie v. Fries, 121 F.3d 808 (2d Cir. 1997); Freitas v. Ault, 109 F.3d 1335, 1338-39 (8th Cir. 1997); Boddie v. Schnieder, 105 F.3d 857 (2d Cir. 1997).  The objective element requires severe or repetitive sexual abuse of an inmate by a prison officer. Robinson v. Danberg, 729 F. Supp. 2d 666, 686 (D. Del. 2010) (citations omitted). The subjective element is whether the official had sufficiently culpable state of mind. *Id*. (citations omitted). Visual-body cavity searches constitute cruel and unusual punishment in violation of the Eighth Amendment only when "they are 'undertaken maliciously or for the purposes of sexually abusing an inmate." *Id* at 335 (quoting Crawford v. Cuomo, 796 F.3d 252, 258 (3d Cir. 2015).  The Eighth Amendment standard was further defined in Ricks v. Shover, 891 F.3d 468 (3d Cir. 2018), in the context of sexual abuse claims.  Drawing on the Supreme Court's framework for excessive force claims in Hudson v. McMillan, 503 U.S. 1,

10

8, 112 S.Ct. 995 (1992), the *Ricks* court rejected a broad reading of *Crawford* and instead found a plaintiff must satisfy both an objective and subjective prong to prevail on an Eighth Amendment sexual abuse claim. Ricks, 891 F.3d at 475. Thus, the "incident must be objectively, sufficient intolerable and cruel, capable of causing harm, and the official must have a culpable state of mind." *Id*.

The subjective prong requires an inquiry into whether the official "had a legitimate penological purpose or if he or she acted 'maliciously and sadistically for the very purpose of causing harm.'" *Id*. (quoting Whitley v. Albers, 475 U.S. 312, 319-20, 106 S.Ct. 1078 (1986)).  Absent a legitimate penological purpose, the type of touching involved in, for instance, a body-cavity search, would be undoubtedly cruel and unusual.  And a desire to humiliate the inmate or gratify the officer – inferred through the officer's conduct – is a reasonable way to distinguish between invasive touching that is permitted by law to ensure safety and that which is not.  An analysis focused on the intent of the officer is therefore appropriate when evaluating whether an objectively intrusive search is constitutional.

In the instance case, even adopting the allegations of Miller's Complaint, there may have been an incidental "touch" of a flashlight.  Defendants maintain that Miller cannot satisfy the subjective prong of the claim for two reasons.  First, the described conduct was not, as a matter of law, undertaken "maliciously and

sadistically for the very purpose of causing harm." *See, e.g.* Ricks, *supra*.  This is so because it has been established that contraband was found on Miller.  As such, even if he were directed to disrobe, this order was *de jure* reasonable.

Moreover, Miller does not produce evidence as to who allegedly "touched" his backside with a cold flashlight (at no time does Miller assert assault with any object).  A "plaintiff alleging that one or more officers engaged in unconstitutional conduct must establish the 'personal involvement' of each named defendant to survive summary judgment and take that defendant to trial." Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 285 (3d Cir. 2018). In Jutrowski, a police officer kicked Jutrowski in the face, breaking his nose and his eye socket.  *Id*. at 286.  Because Jutrowski was "pinned to the pavement when the excessive force occurred" and was "unable to identify his assailant," he brought excessive force claims against four police officers. *Id*. at 284.  Each officer "assert[ed] he neither inflicted the blow himself nor saw anyone else do so."  *Id*. And the dashcam footage did not capture the incident.  *See id.* at 287.  The district court granted summary judgment to all four officers, explaining that because Jutrowski could not "identify which Defendant kicked him," he was asking "the Court to guess which individual Officer Defendant committed the alleged wrong."  Jutrowski v. Twp. of Riverdale, 2017 WL 1395484, at *4 (D.N.J. Apr. 17, 2017).

On appeal, the Third Circuit rejected Jutrowski's argument that "so long as a plaintiff can show that some officer used excessive force, he may haul before a jury all officers who were 'in the immediate vicinity of where excessive force occurred' without any proof of their personal involvement." Jutrowski, 904 F.3d at 289 (citation omitted). After discovery, Jutrowski "still [could not] 'identify the actor that kicked him.'" Id. at 292.  So we refused to subject to trial "at least three defendants who are 'free of liability.'" Id. (quoting Howell v. Cataldi, 464 F.2d 272, 283 (3dCir. 1872)).

Jutrowski's central tenet – that "a defendant's §1983 liability must be predicated on his direct and personal involvement in the alleged violation" – is "manifest in excessive force jurisprudence."  904 F.3d at 289.

Accordingly, Miller clearly cannot satisfy the subjective prong of the Eighth Amendment standard when he cannot even identify who was behind him when he claims he may have felt the cold touch of an object.

Finally, Miller's allegations as alleged do not support a finding that he has created a genuine issue of material fact that would warrant submitting this case to a jury on the objective prong of the Eighth Amendment test.

The objective prong is "'contextual and responsive to contemporary standards of decency.'" Id. (quoting Hudson, 503 U.S. at 8, 112 S.Ct. at 1000).

13

Because "this inquiry is necessarily contextual, fact-specific, and to be conducted in the first instance by the District Court[,]" the Third Circuit declined to "craft a mechanical factors test for when sexual contact is objectively, sufficiently serious." *Id*. at 478. Yet, "[t]he scope, place, and timing of the offensive conduct will bear on the severity, as will the details of the alleged contact." *Id.*

Even if the record supports an inference of physical contact by an unknown Defendant incident to performing the search, Miller has not satisfied his burden of demonstrating objective seriousness. Indeed, Defendant Renfer's alleged comments about Plaintiff's genitalia – as established only through Plaintiff's general recollections given that no evidence was offered as to the specific content of these comments – is the only purportedly cruel and unusual element to the strip search. A survey of decisions by other courts analyzing Eight Amendment sexual abuse claims reveals Defendant Renfer's alledged conduct, though undoubtedly inappropriate, uncomfortable, and unprofessional, simply cannot rise to the level of a constitutional violation, especially when more egregious circumstances were adjudicated constitutionally insufficient. *E.g.,* McIntyre v. Kellinger, 741 F. App'x 891, 892-93 (3d Cir. 2018) (concluding incident in which defendant dragged his hands down plaintiff's buttocks, gripped his buttocks, patted his thighs, and "squeezed [his] ass as if [he] was a woman" while whispering "in a

sexual manner" during a pat-down search was not objectively severe or serious under the Eight Amendment); Ricks, 891 F.3d at 479 (suggesting an "isolated, momentary" incident in which guard "rubbed his erect penis against [plaintiff's] buttocks through both men's clothing" was not sufficiently severe, but permitting amendment); Washington v. Harris, 186 F. App'x 865, 866 (11th Cir. 2006) (concluding inmate failed to state Eighth Amendment claim where a prison guard "crept up behind [the prisoner inmate] while he was working," grabbed his genitals, kissed him on the mouth, and threatened to perform oral sex on him); Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997) (concluding conduct involving female corrections officer who squeezed plaintiff's penis, said "[Y]ou know [you're] a sexy black devil, I like you," bumped into plaintiff with her breasts, and pinned him against the wall "with her whole body vagina against penis" were not sufficiently serious); Armstrong, 2018 WL 6788524, at *1 (granting summary judgment in favor of defendant who, during a random pat-down search, "placed his hands inside Plaintiff's boxer shorts, stroked his penis once, and grabbed his scrotum," and commented "I do what the fuck I want" and "I felt bigger"); Watson v. Wingard, No. 3:16-cv-00055, 2018 WL 2108316, at *1 (W.D. Pa. Jan. 31, 2018) (finding conduct involving defendant who gave plaintiff an "upper cut" to the groin with is forearm, "groped and massaged [his] penis,"

and examined plaintiff's "butt ... like a doctor" did not amount to sexual abuse);

Harris v. Zappan, No. CIV A 97-4957, 1999 WL 360203, at *4-*5 (E.D. Pa. May

28, 1999) (determining allegations of one instance of sexually explicit comments

combined with fondling and rubbing on thighs and breasts was not sufficiently

serious.)  Accordingly, summary judgment should be granted in favor of all

Defendants on Miller's Eighth Amendment strip search claim.

### C.    MILLER'S CLAIMS OF RETALIATION FAIL AS A MATTER OF LAW.

Miller broadly asserts that the Defendants engaged in a "campaign of

retaliation" following a Prison Rape Elimination Act (PREA) complaint he filed

after he was subjected to a strip search[4] on April 19, 2016 (Doc. 1; Exhibit "A").

To establish a claim of illegal retaliation for engaging in protected conduct, a

plaintiff must demonstrate that: (1) his conduct was constitutionally protected; (2)

he suffered an adverse action at the hands of prison officials; and (3) his

constitutionally protected conduct was a substantial or motivating factor in the

decision to take the adverse action.  Watson v. Rozum, 834 F.3d 417, 422 (3d Cir.

2016) (citing Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001)).  An "adverse

---

[4]  As noted in both the SUMF and preceding portions of this brief, Defendants steadfastly maintain that Miller was not subjected to a "strip search".  He was directed to begin disrobing and when the straw with contraband hidden in his pants was identified and recovered, the search was terminated.  However, as a disputed fact, Defendants concede that their argument must assume that a search did occur.

action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights.  Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000) (*quoting* Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)).  Retaliatory motive can be inferred from either: (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link.  *Id*. (*citing* Lauren W. *ex rel*. Jean W. V. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)).

Scrutiny of the Complaint establishes that Miller's claims of retaliation are thread bare and cannot survive summary judgment when subjected to critical analysis. Miller's initial allegation of retaliation is that, "I was eventually taken to the L2 Housing Unit and placed on the 5th floor in an isolation cell" (Doc. 1; Exhibit "A" at p. 6).  Miller indicates he was released from this period of lockdown in July.  Scrutiny of the undisputed evidence in the case establishes that Miller's contention that this period of segregated confinement was retaliatory is patently ludicrous.  Miller's prison file establishes that as a result of the drug smuggling incident which precipitated the search of April 19, 2016, he was found guilty of a serious Class 3 violation of facility regulations and imposed a 90 day sentence of disciplinary confinement (Exhibit "B" at p. 52).  Miller's appeal to this decision was heard and the 90 day disciplinary lockup penalty was upheld on

17

April 26, 2016 (Exhibit "B" at p. 55). Accordingly, the allegation of retaliation related to this period of confinement is meritless.

Miller next alleges that Defendant Renfer labeled him a snitch and confiscated his television without cause. Again, this contention is rebutted by the undisputed record in this case. The only record evidence related to the confiscation of a television from Miller is reflected in a property inventory list dated January 17, 2017 (Exhibit "B" at p. 50). Review of Miller's file reflects that he began a period of disciplinary confinement (which would necessitate the confiscation of his television on January 16, 2017) (Exhibit "B" at p. 47). The report of January 16, 2017, establishes that Miller was determined to have participated in an assault on another inmate named Robert Kotz (Exhibit "B" at p. 47). Again, this is a serious violation of facility regulations and punishment of 55 days of disciplinary confinement was imposed (Exhibit "B" at p. 47). This report is notable in that while both Renfer and Orkwis participated in the investigation, it was more than eight months after the PREA Complaint that Miller had lodged. As such, Miller cannot point to temporal proximity to this disciplinary action and the submission of the PREA Complaint; hence, there can be no presumption of causation supporting a finding of retaliation.

18

Miller's final allegation of retaliation is a decidedly opaque claim of retaliation in which he asserts that Renfer promised to open the block so that two unidentified inmates could assault Miller.  In the Complaint, he assigns no time frame to this incident.  However, in his deposition testimony, Miller testified he believes this assault occurred in June of 2017 (SUMF at ¶s 34, 35, 36; Exhibit "J" at pp. 23-25) (Exhibit "J" at pp. 39, 40).

Renfer submits that the factual record, including Miller's own testimony established that he cannot satisfy the requisite causation requirement for any retaliation claim to proceed.  As far as each other Defendant, Miller cannot point to any fact that would support a finding of personal involvement which would justify submission of the retaliation claim to a jury.

As noted above, in order to establish a claim of retaliation, Miller must demonstrate that his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action – in other words, he must show a causal connection between the protected conduct and the retaliatory action.  To support the required causal connection, a plaintiff must show either a suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or direct evidence of a causal connection, such as an admission by the defendant that the adverse action was done because of the protected

conduct.  Mearin v. Greene, 555 Fed. Appx. 156, 158-59 (3d Cir. 2014) (citing

Lauren W. *ex rel.* Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)).

**Temporal proximity of more than a few days is insufficient to establish**

**causation.**  Booze v. Wetzel, 2015 WL 5173937 at *13-16 (M.D. Pa. 2015)

(collecting cases).

Turning to the record evidence against Renfer and Orkwis, the earliest

adverse action undertaken by either of them against Miller occurred over eight

months after the PREA complaint.  This temporal separation between the

protected conduct and the alleged retaliatory action is not sufficiently proximate to

permit a jury to infer a causal connection between the two.  Further, the record

includes no evidence of statements by either of these Defendants, or any other

direct evidence, to support an inference that their actions were motivated by the

PREA complaint.  Additionally, while Miller asserts in his complaint that the

Defendants were aware of his PREA Complaint this speculation, standing alone,

likewise cannot support an inference that Defendants Renfer and Orkwis' actions

were motivated by Miller's PREA complaint. Having failed to proffer evidence

sufficient to create a triable issue regarding any causal connection between his

constitutionally protected conduct and disciplinary actions against him, Miller

cannot demonstrate a *prima facie* case of retaliation.  Accordingly, all Defendants

are entitled to judgment as a matter of law on Miller's retaliation claim.

### D. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON BOTH THE SEARCH AND RETALIATION CLAIMS.

The doctrine of qualified immunity shields officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "To resolve a claim of qualified immunity, [we] engage in a two-pronged inquiry: (1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was clearly established at the time of the official's conduct." L.R. v. Sch. Dist. Of Phila., 836 F.3d 235, 241 (3d Cir. 2016) (internal quotation marks omitted). We perform this inquiry "in the order we deem most appropriate for the particular case before us." Santini v. Fuentes, 795 F.3d 410, 418 (3d Cir. 2015) (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009).

A clearly established right must be so clear that every "reasonable official would [have understood] that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). The Court does not charge officials with such an understanding unless existing precedent has "placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741

21

(2011).  The Court examines an official's "particular conduct" *id*. at 742, in "the specific context of the case."  Saucier v. Katz, 533 U.S. 194, 201 (2001) (overturned on other grounds); *see also* Mullenix v. Luna, 136 S.Ct. 305, 308 (2015) (noting that specificity is "especially important" in the Fourth Amendment context, where it is sometimes difficult for an officer to determine how relevant legal doctrines will apply to the factual situation before him).  In short, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

Defendants have already outlined the contours of what constitutes unlawful conduct by correctional officers both as it relates to the strip search analysis as well as the retaliation analysis.  While the Defendants maintain that no constitutional violation has taken place on this record, the recitation of the fact pattern to which there is no material dispute, demonstrates that there are no analogous precedents under Third Circuit jurisprudence that would put any of the named defendants on notice that they were violating constitutional rights under either of Miller's theories of recovery.  Accordingly, all Defendants are entitled to qualified immunity.

## V.    CONCLUSION

Based upon the foregoing, Defendants respectfully submit that their Motion for Summary Judgment should be granted and that the Plaintiff's Complaint should be dismissed in its entirety.

Respectfully submitted,

DOUGHERTY, LEVENTHAL & PRICE, L.L.P.

s/Sean P. McDonough

By:    _____
Sean P. McDonough, Esquire
Attorney for Luzerne Co. Defendants
PA ID# 47428
75 Glenmaura National Blvd.
Moosic, PA 18507
Phone (570) 347-1011
Fax (570) 347-7028
smcdonough@dlplaw.com

23

## CERTIFICATE OF REGARDING WORD COUNT

I, Sean P. McDonough, Esquire, Attorney for Defendants, hereby certify

that the body of the foregoing brief, including footnotes, is 5,988 words in length.

Date: March 12, 2021                    S/Sean P. McDonough_____
                                        Sean P. McDonough, Esquire
                                        Attorney for Defendants

## CERTIFICATE OF SERVICE

I, SEAN P. McDONOUGH, ESQUIRE, hereby certify that on March 12, 2021, I served the foregoing BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT upon the persons indicated below as follows:

Via first class mail, postage prepaid;

Smart Communications/PADOC
Joshua S. Miller/ JX1241
SCI Mahanoy
P.O. Box 33028
St. Petersburg, FL 3373

Respectfully submitted,

DOUGHERTY, LEVENTHAL & PRICE, L.L.P.

s/Sean P. McDonough

_____
SEAN P. McDONOUGH, ESQUIRE
Attorney for Luzerne Co. Defendants
PA ID# 47428

25