IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSHUA MILLER,** | : | CIVIL NO. 3:18-CV-858 |
| | : | |
| Plaintiff, | : | (Judge Wilson) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **LUZERNE COUNTY DEP'T.** | : | |
| **OF CORRECTIONS, et al.,** | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

I. **Factual Background**

This case, which comes before us for consideration of the defendants' motion for summary judgment,[1] is a *pro se* prisoner lawsuit brought by Joshua Miller against various correctional officials at the Luzerne County Prison.

While Miller's complaint is not entirely pellucid, currently the plaintiff appears to bring Fourth and Eighth Amendment excessive force claims against the defendants, along with a subsequent allegation that prison officials retaliated against Miller by instigating disciplinary proceedings against him after he made these excessive force claims.[2]

---

[1] We have previously addressed a summary judgment motion filed by Miller through a separate Report and Recommendation.

[2] Miller's complaint had also initially lodged some sort of claim relating to the Prison

1

With respect to these excessive force allegations, the gravamen of Miller's complaint relates to a strip search of the plaintiff conducted at the prison on April 19, 2016. As to this incident, the parties seem to agree that this search was inspired by an investigation into the alleged introduction of contraband drugs into the institution. However, from this single point of consensus the parties posit starkly different and utterly irreconcilable competing factual narratives regarding this prison strip search.

For his part, Miller alleges that this strip search was conducted unreasonably, in a brutally violent and sexually demeaning fashion marked by threatened and actual violence and humiliation, coupled with physical and verbal abuse. (Docs. 64, 65). The defendants cast this case in a strikingly different factual light, insisting that the strip search was conducted for valid penological reasons, in a thoroughly professional fashion, utilizing the minimum force necessary to ensure the safe and secure running of the institution. (Doc. 67).

As for Miller's First Amendment retaliation claims, while Miller asserts that he was subjected to discipline in retaliation for his protests regarding prison search policies, the evidence of these disciplinary proceedings suggests otherwise. For example, the evidence shows that in the wake of this April 19, 2016 search, prison staff reportedly recovered contraband from Miller, a straw containing some powder.

---

Rape Elimination Act (PREA) but that claim was dismissed by the district court, leaving only these constitutional claims in this lawsuit.

Miller was the subject of prison disciplinary proceedings, and a state criminal prosecution, as a result of this discovery. At the conclusion of those disciplinary proceedings, Miler was found to have violated prison rules and was placed in disciplinary confinement for 90 days. (Doc. 67, Ex. B, at 52).

Some five months later, in January of 2017, Miller was the subject of a second disciplinary proceeding. This proceeding involved allegations that Miller had a verbal and physical altercation with another prisoner. In connection with this second incident, prison surveillance cameras captured images of Miller entering the other prisoner's cell, and in an interview with correctional staff Miller acknowledged a verbal exchange with the other inmate, while denying a physical confrontation. (Id., at 46). This second episode also resulted in a finding of institutional misconduct and Miller received an additional 55 days of disciplinary confinement for this rules violation. (Id., at 47-50). While he was in disciplinary confinement, prison officials confiscated and held his television since Miller was not permitted television privileges in disciplinary custody. (Id.)

It is against the backdrop of these essentially undisputed facts that we consider the defendants' motion for summary judgment. (Doc. 66). This motion is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, it is recommended that the motion be granted, in part, and denied, in part, as follows: Miller's First Amendment retaliation claim should be dismissed, but disputed issues

3

of fact preclude summary judgment on any Fourth or Eighth Amendment excessive force claims.

## II. Discussion

### A. Motion for Summary Judgment – Standard of Review

The defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., 702 F.Supp.2d 465, 468 (M.D. Pa. 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec.

& Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers

Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark New Jersey v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982); see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, it is emphatically not the province of the court to weigh evidence or assess credibility when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be

taken as true. Id. Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Anderson, 477 U.S. at 252; see also Big Apple BMW, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011).

### B. Miller's First Amendment Retaliation Claim Fails.

At the outset, Miller's complaint advances what we construe as a First Amendment retaliation claim premised upon Miller's insistence that prison officials disciplined him unfairly in retaliation of his First Amendment petitioning activity. Miller faces an exacting burden of proof and persuasion in order to sustain this claim

in a prison disciplinary context.

A prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights must prove the following three elements: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002). With respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

The third essential element to a retaliation claim is that there be a causal link between the exercise of a constitutional right and the adverse action taken against the prisoner. Rauser, 241 F.3d at 333-34. To establish this third, and crucial, component—causation—to a constitutional retaliation claim, Miller must make a specific showing. In this setting:

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997). In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). Moreover, when examining these causation issues, we are specifically admonished that:

> A court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate. Consequently, a putative plaintiff by engaging in protected activity might be able to insulate himself from actions adverse to him that a public actor should take. The point we make is not theoretical as we do not doubt that public actors are well aware that persons disappointed with official decisions and actions frequently bring litigation against the actors responsible for the decisions or actions in their individual capacities, and the actors surely would want to avoid such unpleasant events. Thus, it would be natural for a public actor to attempt to head off a putative plaintiff with the unwarranted expenditure of public funds. Courts by their decisions should not encourage such activity and, by enforcing the requirement that a plaintiff show causation in a retaliation case, can avoid doing so as they will protect the public actor from unjustified litigation for his appropriate conduct. In this regard we recognize that often public actors such as those in this case must make a large number of decisions in charged atmospheres thereby inviting litigation against themselves in which plaintiffs ask the courts to second guess the actors' decisions.

Id. at 267-68.

Mindful of these concerns, courts have in the past carefully scrutinized inmate claims of retaliation premised solely on circumstantial proof of a temporal proximity between the plaintiff's conduct and allegedly retaliatory acts. Indeed, this Court has spoken directly to the issue of what must be shown to state a valid complaint in this factual context, noting that:

9

> To establish the causation element of a retaliation claim, a plaintiff must prove that his or her participation in a protected activity motivated the defendant to perform the retaliatory act. Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002); Meenan v. Harrison, Civ. A. No. 3:03-CV-1300, 2006 WL 1000032, at *4 (M.D. Pa. Apr. 4, 2006) (observing that a plaintiff must demonstrate that the exercise of First Amendment rights "played some substantial role" in the defendant's action). The temporal proximity of a retaliatory act to a plaintiff's exercise of his or her First Amendment rights is probative, but not dispositive, of the causation element. Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003); see also Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir. 1997) (stating that "temporal proximity merely provides an evidentiary basis from which an inference can be drawn"). For temporal proximity alone to establish causation, the "timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." Marasco, 318 F.3d at 512 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)) . . . [T]he Third Circuit Court of Appeals has suggested that a temporal proximity of two days is sufficient to establish causation, see Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 & n. 5 (3d Cir. 2000), whereas a temporal proximity of ten days is sufficient to establish causation only when accompanied by other evidence of . . . wrongdoing, Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003). This suggests that the temporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence.

Conklin v. Warrington Tp., No. 06-2245, 2009 WL 1227950, *3 (M.D. Pa. April 30, 2009).

Applying this standard, courts in civil rights cases have frequently rebuffed speculative efforts to infer causation from temporal proximity when a span of weeks or months separated the plaintiff's constitutionally protected conduct from the defendants' alleged acts of retaliation. Thus, "[o]ur sister courts have held that a temporal proximity of as little as seventeen days was insufficient to establish

10

causation. See Killen v. N.W. Human Servs., Inc., No. 06-4100, 2007 WL 2684541, at *8 (E.D. Pa. Sept. 7, 2007) (holding that temporal proximity of seventeen days was insufficient to establish causation); see also Farrell, 206 F.3d at 279 n. 6 (suggesting that temporal proximity of seven weeks would be insufficient to establish causation); Smith v. ABF Freight Sys., Inc., No. 04-2231, 2007 WL 3231969, at *11 (M.D. Pa. Oct. 29, 2007) (holding that temporal proximity of one and one-half months was insufficient to establish causation); Mar v. City of McKeesport, No. 05-19, 2007 WL 2769718, at *4 (W.D. Pa. Sept. 20, 2007) (holding that temporal proximity of three months was insufficient to establish causation)." Fischer v. Transue, 04-2756, 2008 WL 3981521, *10 (M.D. Pa. Aug. 22, 2008) (holding that temporal proximity of three weeks was insufficient to establish causation).

    While filing false misconduct reports may constitute the type of action that will, in certain cases, support a retaliation claim, Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), in a prison discipline context, an inmate's retaliation claim fails whenever the defendant shows that there is "some evidence" to support the discipline citation. As the Third Circuit has observed: "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings . . . . See Henderson v. Baird, 29 F.3d 464, 469 (8th Cir.1994) (stating that a finding of 'some evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)." Nifas v. Beard, 374 F.App'x 241, 244 (3d Cir. 2010).

11

Judged against these legal guideposts, Miller's First Amendment retaliation claims fail for two reasons. First, particularly with respect to the January 2017 disciplinary proceeding, there simply is no powerfully suggestive temporal proximity between Miller's First Amendment protected activities and the prison disciplinary proceeding which would permit an inference of retaliation. Quite the contrary, these events are separated by months, an immutable fact which undermines any claim of a causal connection between these events.

More fundamentally, these retaliation claims fail because a review of the disciplinary proceeding records reveal that there was ample evidence to support both disciplinary citations. Thus, in April, 2016 Miller was found to have contraband concealed on his person, and in January of 2017, prison videos and Miller's own partial admissions confirmed that he had violated prison rules by verbally and physically confronting a fellow prisoner. Since a finding of some evidence to support a prison disciplinary determination checkmates the prisoner's retaliation claim, the evidentiary support for these disciplinary actions defeat Miller's First Amendment retaliation claims. Nifas, 374 F. App'x at 244.

### C. Material Factual Disputes Preclude Summary Judgment on Miller's Excessive Force Claims.

As we understand it, the remaining claims advanced by Miller are in the nature of excessive force claims under the Fourth and Eighth Amendments. These excessive force claims frequently entails a fact-specific inquiry. As we have observed:

> While the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." U.S. Const. amend. IV, in order to give force to this guarantee, government officials are limited to conducting searches that are reasonable. Delaware v. Prouse, 440 U.S. 648, 653-54, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). As the Third Circuit has explained:
>
>> Reasonableness under the Fourth Amendment is a flexible standard, Bodine v. Warwick, 72 F.3d 393, 398 (3d Cir. 1995), "not capable of precise definition or mechanical application," Bell [v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)]. "In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." Id.

Bakhtiari v. Madrigal, No. 3:18-CV-38, 2019 WL 2096154, at *11 (M.D. Pa. Jan. 3, 2019), report and recommendation adopted in part, rejected in part, No. 3:18-CV-38, 2019 WL 2084445 (M.D. Pa. May 13, 2019), aff'd, 841 F. App'x 457 (3d Cir. 2021) (quoting Florence v. Bd. of Chosen Freeholders of Cty. of Burlington, 621 F.3d 296, 299 (3d Cir. 2010), aff'd, 566 U.S. 318, (2012)).

Thus, while it is clear as a general rule that prison officials may conduct strip searches of inmates under the Fourth Amendment in order to ensure institutional safety and security, Florence, 566 U.S. 318, Fourth Amendment excessive force claims "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." Graham v. Connor, 490 U.S. 386, 388, 109 S. Ct. 1865, 1867–68, 104 L. Ed. 2d 443 (1989). In this constitutional context:

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing

13

> of " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' " against the countervailing governmental interests at stake. *Id.,* at 8, 105 S.Ct., at 1699, quoting United States v. Place, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983). . . . . Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case[.]

Graham, 490 U.S. at 396.

Further, to the extent that Miller is alleging that his Eighth Amendment right to be free from cruel and unusual punishment was violated when he was subjected to sexually abusive and demeaning behavior by the defendants during this strip search, in determining whether alleged sexual harassment of an inmate by correctional staff rises to the level of an Eighth Amendment violation, courts have also adopted a subtle, fact-bound and multi-faceted approach, noting that:

> The scope, place, and timing of the offensive conduct will bear on its severity, as will the details of the alleged contact. But it goes without saying that objectively serious sexual contact would include sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline. In context, including whether it violates established prison procedures, other sexualized touching may also be objectively serious.

Farlow v. Conway, No. 3:20-CV-349, 2021 WL 5989789, at *4 (M.D. Pa. Aug. 5, 2021), report and recommendation adopted, No. CV 3:20-349, 2021 WL 5988570 (M.D. Pa. Dec. 17, 2021), and report and recommendation adopted sub nom. HASHIM FARLOW, Plaintiff v. B. CONWAY, Defendant, No. CV 3:20-349,

14

2021 WL 6123989 (M.D. Pa. Dec. 23, 2021) (quoting Ricks v. Shover, 891 F.3d 468, 478 (3d Cir. 2018)).

In short, with respect to these Fourth and Eighth Amendment excessive force claims advanced by Miller, the facts matter. And when material facts are in dispute, summary judgment is inappropriate. This basic tenet of summary judgment practice applies here and is fatal to the defendants' motion for summary judgment on these excessive force claims since the parties present starkly contrasting factual narratives regarding this episode. As the party seeking summary judgment, it is incumbent upon the defendants to show an absence of a genuine issue of material fact. Conoshenti, 364 F.3d at 145-46. The defendants cannot carry that burden in this case, where the record before us is replete with conflicting accounts of this strip search. Since we must "consider all evidence in the light most favorable to the party opposing the motion," A.W., 486 F.3d at 794, these profound factual disputes are fatal to any summary judgment motion on these excessive force claims and preclude any summary judgment in favor of the defendants on these claims.

### III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion for summary judgment, (Doc. 66), be GRANTED, in part, and DENIED, in part, as follows: Miller's First Amendment retaliation claim should be

dismissed, but disputed issues of fact preclude summary judgment on any Fourth or Eighth Amendment excessive force claims.

    The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 14th day of March 2022.

                                           *S/ Martin C. Carlson*
                                           Martin C. Carlson
                                           United States Magistrate Judge